**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael G. VISNICH, Defendant– Appellant.**

**No. 00–4141.**

United States Court of Appeals, Sixth Circuit.

Feb. 28, 2002.

Before JONES and MOORE, Circuit Judges; HAYNES,* District Judge.

## OPINION

HAYNES, District Judge.

The issue in this appeal is whether the district court properly refused the defendant's motion to suppress evidence that was seized pursuant to an inventory search of his automobile.[1]  For the reasons set out below, we REVERSE the district court's ruling on the suppression motion and REMAND the case for further proceedings.  In sum, the facts are that the police lacked probable cause to arrest the defendant.  Therefore, the decision to tow and inventory the contents of the vehicle was not incident to a lawful arrest.

---

* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

1. The defendant had also raised a constitutional claim that the statute prohibiting the possession of a firearm by a person under a domestic protection order, 18 U.S.C. § 922(g)(8), represents an unconstitutional exercise of Congress' Commerce Clause.  The defendant, in correspondence to the Clerk of Court, has acknowledged that *United States v. Napier*, 233 F.3d 394 (6th Cir.2000) is controlling in this case, and forecloses any argument that the statute is unconstitutional.

## I. BACKGROUND

On April 23, 1999, James Kerchum, one of the defendant's close friends asked Visnich to go to Kerchum's home and retrieve some of his possessions for him. Honoring this request, the defendant went to Kerchum's home in Girard, Ohio, and removed some items from the home, including some firearms and ammunition. Visnich should have thought twice about retrieving the firearms. At the time, Visnich was under a protection order as a result of severe domestic discord between he and his wife. The order prohibited Visnich from initiating contact with, or abusing his wife and daughters. The protection order also prohibited him from possessing firearms or ammunition.

After retrieving Kerchum's possessions, Visnich left the house and proceeded to walk in the direction of a nearby store. As he was walking, Cheryl and Tiffany Kerchum, Mr. Kerchum's estranged wife and daughter, and Ken Buckner, Mr. Kerchum's brother, drove past Visnich. At this point the following sequence of events took place:

[The] Girard Police received a call of burglary in progress at 36 Stambaugh Street. As Cheryl Kerchum arrived there with her daughter Tiffany, she observed a man walking away from her come carrying items which she believed belonged to her. She telephoned "911" and gave the police dispatcher a description of the man and the direction he was taking. Ms. Kerchum and her daughter followed the man and watched him as he entered Towne Center Beverage located in the Towne Center Plaza. By the time the police arrived at Towne Center Plaza, the alleged burglar had entered the front of the beverage store with the items described by Ms. Kerchum and exited the rear without them. The man was stopped by Officer Ronald A. Schnarrs of the Girard Police Department in the rear of the building, at which time he was identified as the defendant, Michael Visnich. The defendant explained to Officer Schnarrs that he entered the Kerchum residence at the request of his friend, [James] Kerchum, to retrieve some personal items for him.

While the defendant was detained by Officer Schnarrs, another Girard Police Officer, Anthony Zuppo, arrived at the scene and entered the beverage store in an attempt to locate the items observed in the defendant's possession. Officer Zuppo found the items behind a door in the bathroom of the beverage store. Officer Zuppo searched the bags in the presence of Cheryl and Tiffany Kerchum.

While at the beverage store, Tiffany Kerchum informed Officer Zuppo that the defendant's automobile was parked on Stambaugh Street. Officer Zuppo then proceeded to where Tiffany indicated the defendant's car was located. Officer Zuppo ran a registration check of the automobile which verified that the owner was the defendant. At the time Officer Zuppo ran the registration check of the defendant's automobile, the defendant was still detained in the back of Officer Schnarrs' patrol car in connection with the burglary investigation, and the officers had not looked into the vehicle.

After Officer Zuppo confirmed that the vehicle was the defendant's, he looked inside the cr. Officer Zuppo testified that he saw 'three black cases like ... you keep guns in ... [and] the barrel of a gun sticking out from under a coat in the back seat.' Officer Zuppo then asked the defendant for the keys to the car which he denied having. Officer Zuppo, acting upon his belief that there were firearms in the automobile and that the defendant was under arrest for

the burglary, called for a tow truck. Officer Zuppo and at least one other officer proceeded to enter the defendant's vehicle using a 'slim-jim' and inventoried the automobile before it was towed. (J.A. at 108–10)

## II. ANALYSIS

The issue on appeal is whether the district court properly refused the defendant's request to suppress evidence seized from the backseat of his vehicle. Whether the search qualified as a lawful inventory of the automobile's contents or as a search incident to an arrest turns on the question of whether the police had probable cause to arrest Visnich. We review probable cause determinations *de novo. United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir.1993).

■ At the outset, we observe that the government's position is not supported by the police officers' testimony at the suppression hearing. The government argues that Visnich was not under arrest when the police decided to approach the vehicle. Thus, in the government's view, the police walked over to the vehicle to further investigate the burglary complaint. In sum, the government argues that: (1) Officer Zuppo approached the defendant's vehicle as part of his investigation of the burglary complaint; (2) when he approached the car, Officer Zuppo observed through the window the barrel of a partially concealed firearm in the backseat; (3) the weapon was in plain view, and gave Officer Zuppo probable cause to believe that the defendant was illegally transporting a firearm in violation of Ohio law; and (4) he seized the weapon and conducted an inventory search of the vehicle. The government further argues that inventory search was also in the interest of public safety.

The testimony of the police officers at the suppression hearing does not support the government's position. The defendant was arrested almost immediately after he was stopped by the police. The officers gave conflicting testimony at the suppression hearing as to the exact point in time the defendant was placed under arrest. Officer Schnarrs testified that Visnich was not formally arrested, i.e., read his Miranda rights until Officer Zuppo noticed the weapon in the backseat of the car. Officer Zuppo, on the other hand, testified that Visnich was arrested long before that time and primarily on the basis of the burglary complaint.

Q. As you indicated, you said he was placed under arrest because of the burglary complaint?

A. Yes.

Q. And that was based upon the claims of Cheryl Kerchum and her brother, correct?

A. Correct.

Q. That she saw a man walking down the street with items that she believed to be hers?

A. Right.

Q. And based on here word alone, then, he was arrested at the liquor store?

A. Based upon her word and based upon——

Q. The observation that we was carrying——

A. Yes.

Q. He was arrested at the liquor store?

A. Right.

Q. Were you responsible for the order to arrest him or——

A. No, he was already in custody when I arrived there. (J.A. at 208).

It was Officer Zuppo's impression that the defendant was under arrest long before the police decided to approach the vehicle.

Even if we did not have Zuppo on the record stating this belief, the case law is

clear that a detention can turn into an arrest without formal words of arrest. The Sixth Circuit in *United States v. McCaleb*, 552 F.2d 717, 720 (6th Cir.1977) stated that "[i]t does not take formal words of arrest or booking at a police station to complete an arrest. It simply takes the deprivation of liberty under the law." As Officer Schnarrs acknowledged at the suppression hearing, the defendant was arrested at liquor store.

Q. Patrolman Schnarrs, in addition, you told Mr. Bryan that in your mind Mr. Visnich was not under arrest. He was being detained in the rear of your cruiser while an investigation was going on; is that correct?

A. Yes.

Q. Was he free to leave if he said, gee, I don't feel like sticking around anymore, can I leave, would you have let him leave?

A. No. (J.A. at 195).

The district court acknowledged that the decision to tow and inventory the vehicle was incident to the defendant's arrest. The district court reasoned that (1) the vehicle was lawfully in the custody of the police; (2) the vehicle was in police custody because the defendant was lawfully under arrest; (3) incident to the defendant's arrest, the police prepared to execute the department's policy to tow and inventory the contents of vehicle of a suspect taken into police custody; (4) when he approached the car with the intent to have it towed and inventoried, Zuppo observed through the window the barrel of a partially concealed firearm in the backseat; (5) the weapon was in plain view; (6) this was sufficient to justify a search because the weapon gave Zuppo probable cause to believe that the defendant was illegally

transporting a firearm in violation of Ohio law,[2] and (7) the safety of the police and the general public also demanded that Zuppo seize the firearm and search the vehicle for additional weapons.

The district court's reasoning overlooks an important preliminary fact. While the police clearly had a reasonable basis in fact to detain Visnich to investigate the burglary complaint, the facts militate against the view that the police had probable cause to *arrest* him. If the arrest were not lawful, the decision to tow and inventory the vehicle was likewise unlawful. *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). Police do not have probable cause to arrest a suspect unless, at the time of the arrest, they have knowledge of facts and circumstances to warrant a belief that the suspect has committed a crime or a crime is in the process of being committed. The Supreme Court in *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) explained that "[p]robable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." (internal quotations omitted).

As to warrantless seizures, the Supreme Court "has never sustained a search upon the sole grounds that officers reasonably expected to find evidence and voluntarily confined their activities to the least intrusive means consistent with that end" and considers warrantless searches to be "*per se* unreasonable," *Katz v. United States*, 389 U.S. 347, 356, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), unless the officers can establish

---

**2.** In Ohio, it is unlawful to "knowingly transport or have a firearm in a motor vehicle, unless it is unloaded, and is carried ... in plain sight and secured in a rack or holder made for that purpose; [or] in plain sight with the action open or the weapon stripped ... " O.R.C. § 2923.16(C).

probable cause for their search and seizures, or one of the enumerated exceptions to the warrant requirement applies. *United States v. Akrawi,* 920 F.2d 418, 421 (6th Cir.1990). These exceptions should be strictly construed lest the exceptions consume the general prohibition against warrantless searches.

Reasonably suspicious circumstances can also justify a brief detention of a person, *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), based upon the totality of the circumstances, *Alabama v. White,* 496 U.S. 325, 328–29, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), but an arrest requires probable cause, a higher showing of likely criminal activity. *United States v. Obasa,* 15 F.3d 603, 607 (6th Cir.1994) ("When the police actions go beyond checking out the suspicious circumstances that led to the original stop, the detention becomes an arrest and must be supported by probable cause.").

█ The facts are that the police lacked probable cause to believe that Visnich had committed a burglary or any other crime that would have warranted an inventory search of his vehicle. Zuppo testified that the arrest was predicated on the burglary complaint and the fact that Visnich was carrying camera bags which apparently belonged to Mrs. Kerchum. (J.A. at 208). This, however, was insufficient to justify a belief that Visnich had committed a burglary in light of other facts the police knew before they arrested Visnich. First, at least one of the officers knew that Mr. and Mrs. Kerchum had been separated and that Mrs. Kerchum had not lived in the house for almost four months. (J.A. at 213) This should have caused the police to discount to some degree the strength of the burglary complaint. This is particularly true considering that Visnich immediately explained that he had permission from Mr. Kerchum, the sole resident at that time, to be in the house. (J.A. at 214)

The defendant's claim was buttressed by statements Tiffany Kerchum made to the police at the scene of the arrest that Visnich was her father's friend and that it was not unusual for him to be at the house. (J.A. at 212) At the suppression hearing, Tiffany Kerchum testified that Visnich would come over to the house "pretty much" on a daily basis. (J.A. at 219) That Visnich had permission to be in the house was also supported by the absence of any evidence of forced entry. (J.A. 210) Without a doubt, the fact which confirms the police lacked probable cause to arrest Visnich is that they never attempted to simply ask Mr. Kerchum whether Visnich had permission to be in the house. The police could easily have done this because Kerchum, at that time, was being detained at a courthouse less than one minute, or only a telephone call away. (Final Br. of Appellant at 36). Moreover, a police officer is required to consider, under the totality of circumstances approach, both exculpatory and inculpatory evidence before determining if probable cause exists for making an arrest. *Gardenhire v. Schubert,* 205 F.3d 303, 318 (6th Cir.2000) (citing *Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir. 1999)).

With reasonable suspicion sufficient to detain (but not arrest) the defendant, the police could have lawfully seized any item that was in plain view that was contemporaneous in time and place to where the defendant was being detained. This is true even in cases, like this one, where the arrest is premature. For example, in *United States v. Bentley,* 29 F.3d 1073 (6th Cir.1994), the defendants were arrested without probable cause, but as a result of a valid traffic stop. During the stop and arrest, the officers saw incriminating evidence in the vehicle that was in plain view. Because the initial traffic stop was valid, the Court found that the officers did not

violate the defendant's Fourth Amendment rights.

The defendant's argument that the *Bentley* case is distinguishable has merit. "[U]nlike, *Bentley,* the officers did not, indeed could not, see firearms in plain view while detaining Visnich at the Town Center Plaza." Final Br. of Appellant at 39. Admittedly, it does seem strange at first to think that once the police detained Visnich to investigate the burglary complaint, they could not walk a block down the street to check out what was in his car. Nevertheless, in *United States v. Davis,* 94 F.3d 1465 (10th Cir.1996), the police unlawfully detained a suspect without a reasonable basis in fact to believe that he was engaged in criminal activity. When the police ordered the defendant to put his hands on top of his vehicle, instead, the defendant entered the front seat of his vehicle and threw a firearm in the back seat, in the officer's plain view. Id. at 1467. The court reversed the defendant's conviction stating that "[the defendant's] act of removing the firearm from his coat and placing it in plain view was a direct result of his unlawful detention." Id. at 1470. In a word, *Davis* reaffirms the principle that if the detention or arrest that enables the police to discover incriminating evidence in plain view is unlawful, the evidence is tainted by the unlawful arrest.

The case before us is quite unlike the cases the district court cites in support of its view that the detention would have supported approaching the vehicle. This case is unlike the case in which pursuant to a valid traffic stop, police approach the vehicle and come upon incriminating evidence in plain view. In this case, the detention occurred at an area that was a block away from the car. At that time, the police had no justification whatsoever to approach the car. For example, consider where the police stop a person for a traffic violation a block away from his residence.

They suspect that he has been involved in a burglary. They walk over to his home and through the window discover incriminating evidence in plain view. To sanction such behavior would be an abuse of plain view doctrine. The plain view exception is not mobile. In other words, the police cannot "shop around" without probable cause for the best place to conduct a plain view search. If there were not probable cause to be in the place where the incriminating evidence was spotted, then the search is unreasonable. Here, the arrest was not supported by probable cause, therefore the decision to execute a tow and inventory search of the vehicle was unlawful. Consequently, what the police discovered when peering into the defendant's vehicle cannot be admitted into evidence consistent with the dictates of the Fourth Amendment.

## III. CONCLUSION

Accordingly, because the officers conducted an invalid search of Visnich's vehicle and improperly used the seized weapons therein to prosecute him, we REVERSE and REMAND the judgment of the district court.

KAREN NELSON MOORE, Circuit Judge, dissenting.

The majority concludes that upon the facts presented the police had neither probable cause to arrest Michael Visnich nor probable cause to believe that Visnich's automobile contained contraband sufficient to support a search pursuant to the automobile exception to the Fourth Amendment's warrant requirement. Because I believe that, in its application of the relevant Fourth Amendment principles, the majority has set too high a bar for probable cause, I respectfully dissent.

In reaching its conclusion that the police did not have probable cause to arrest Vis-

nich, the majority cites a number of facts – such as Visnich's innocent explanation for his presence in the Kerchum house, the fact that Mrs. Kerchum was not living in the house, Mrs. Kerchum's failure to identify the contents of the bags, and the fact that the police did not observe signs of forced entry – to counter the inculpatory facts available to the police at the time of the arrest. At best, however, these observations merely demonstrate that there was room for doubt as to Visnich's guilt. Probable cause does not require the police to eliminate any doubt about the defendant's guilt. It requires merely that the police have "reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Moreover, "[a] law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir.1999). In the instant case, Cheryl Kerchum provided eyewitness testimony stating that she observed the defendant walking away from her house with items that she believed belonged to her. She followed the defendant to the beverage store and identified him to the officers when they arrived. The defendant was found in possession of items taken from the Kerchums' home. Probable cause was further supported by the defendant's behavior in abandoning the

items in a bathroom when it appeared that he was being followed by the police.

Visnich's chief objection to his arrest is based upon the police's failure to accept or investigate his exculpatory version of the facts. Probable cause is not negated, however, simply by the defendant's provision of a plausible exculpatory explanation.[3] *See id.* at 371 "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Id.* At the point that Visnich was apprehended, I believe that the police had probable cause to effect an arrest based upon the statement of Mrs. Kerchum, Mrs. Kerchum's identification of the bags in Visnich's possession, and Visnich's behavior in abandoning the bags in the liquor store. The fact that he subsequently offered an innocent explanation after his apprehension does not then negate probable cause. *See Klein v. Long*, 275 F.3d 544, 551–52 (6th Cir.2001).

The majority emphasizes that there was some corroboration for Visnich's story in the form of Tiffany Kerchum's statement to the police that she recognized the defendant as a friend of her father's. I do not believe, however, that this corroboration was sufficient to dispel probable cause. Friends sometimes steal from each other. In addition, Visnich's story was inconsistent with his behavior in abandoning the bags. If he had every right to remove the items from the house, why would he hasti-

---

**3.** I note here that *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir.2000), is distinguishable from the case at bar. *Gardenhire* held that an exculpatory explanation may be one factor in the "totality of the circumstances" that police consider in determining whether probable cause exists. In that case, however, the only basis for probable cause was the "bare allegation" that items in a business owner's storefront belonged to someone else. *See id.* at 316–17. In the instant case, however, Officers Zuppo and Schnarrs were presented with

much more incriminating evidence than the "bare allegation" of Mrs. Kerchum, such as Cheryl Kerchum's eyewitness testimony stating that she observed the defendant walking away from her house with items that she believed belonged to her, the fact that the defendant was found in possession of items taken from the Kerchums' home, and the defendant's behavior in abandoning the items in a bathroom when it appeared that he was being followed by the police.

ly abandon them in a liquor store bathroom at the first sign of police pursuit? I therefore cannot conclude, as a matter of law, that Tiffany Kerchum's identification overcame the probable cause generated by the weight of the inculpatory evidence available at the time of arrest.

The majority, having concluded that there was no probable cause to arrest Visnich, next determines that there was likewise no probable cause to search the defendant's automobile pursuant to the automobile exception to the warrant requirement. "Under the automobile exception to the warrant requirement, law enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime." *United States v. Lumpkin,* 159 F.3d 983, 986 (6th Cir.1998). The exception to the warrant requirement for automobiles is justified by the "vagrant and mobile nature" of such vehicles, as well as the reduced expectation of privacy that results "from the fact that extensive, and often noncriminal contact with automobiles will bring local officials in plain view of evidence, fruits, or instrumentalities of a crime, or contraband." *Cady v. Dombrowski,* 413 U.S. 433, 441–42, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). "[N]o special exigency is required to conduct a warrantless search of an automobile when the car is mobile and the searching officer has probable cause to believe that fruits of a crime may be present in the automobile." *United States v. Graham,* 275 F.3d 490, 509–10 (6th Cir.2001).

The majority's conclusion that the police lacked probable cause to search the vehicle is apparently based upon its belief that, upon the evidence available in the record, the officers were not aware of any facts linking the vehicle to the alleged burglary. In particular, the majority emphasizes that the vehicle was at a distance from the liquor store and the absence of any facts suggesting that Visnich had made multiple trips between the home and the automobile.

I respectfully disagree with the majority's characterization of the record on this issue. Visnich's automobile was identified in the vicinity of the liquor store by Tiffany Kerchum while the burglary investigation was still ongoing. As I have already explained, I believe that the facts supported the officers' belief at that time that Visnich had illegally taken items from the Kerchum home. The facts on the record indicate that Visnich walked past the car and into the liquor store with the bags, which could support the inference that he intended to take the bags to his car before realizing that he was being followed by the police. The fact that Visnich was apparently carrying a number of bags from the Kerchum house to his automobile made it reasonable for the police to conclude that he may have made previous trips to his vehicle. These facts, in my opinion, sufficiently demonstrated a " 'fair probability that contraband or evidence of a crime w[ould] be found' " in his vehicle, as is required to show probable cause. *United States v. Padro,* 52 F.3d 120, 123 (6th Cir.1995) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Under the automobile exception to the Fourth Amendment's warrant requirement, no more was necessary to justify the search.

For the aforementioned reasons, I respectfully dissent.