NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0533n.06

No. 20-3335

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 14, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FLOYD LOFTIES, | ) | |
|     Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| ELIZABETH GRABEL SP567, Ohio State Highway Patrol-Post 90; TROOPER CRAIG A. HODGKINSON, Ohio State Highway Patrol-Post 90, | ) ) ) ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
|     Defendants-Appellees. | ) ) | |

BEFORE:    SUHRHEINRICH, LARSEN, and READLER, Circuit Judges.

SUHRHEINRICH, Circuit Judge.   Defendants-Appellees Ohio State Highway Patrol Troopers Elizabeth Grabel and Craig Hodgkinson issued Plaintiff-Appellant Floyd Lofties a traffic ticket for driving down the shoulder of the Ohio Turnpike to avoid a traffic jam.  They did not issue a ticket to Jason Definbaugh, the driver who veered into the shoulder and hit Lofties' vehicle. Grabel, Hodgkinson, and Definbaugh are white.  Lofties is black.  Lofties believes that his race is the reason why he got a ticket and Definbaugh did not.  He sued the officers for race-based selective enforcement under 42 U.S.C. § 1983.   The district court granted summary judgment to the Troopers.  We affirm.

**I.**

On May 1, 2018, Lofties found himself stuck in slow traffic due to construction on westbound Interstate 80 near Sandusky, Ohio.  Three lanes were narrowing to two.  Definbaugh was several cars ahead of him, driving a transport trailer truck.  "After a period of time, [Lofties]

. . . decided to pull onto the shoulder and pass Definbaugh's truck, because [he] noticed that there was a clear opening in the lane in front of the truck." According to Lofties, "[a]s [he] was driving up to Definbaugh's truck to pass it, Definbaugh turned into [the] shoulder, as if to block [Lofties]." Lofties "backed off to avoid a collision" and Definbaugh returned to traveling fully in the far left lane.

Lofties attempted the maneuver a second time. "Once again, . . . Definbaugh again pulled his truck onto the shoulder, cutting [Lofties] off." Lofties stopped, "but Definbaugh's trailer continued moving and collided with [Lofties'] SUV when a part of the back of his trailer hit the front passenger side" of Lofties' vehicle. According to Lofties, the collision occurred "when both the Definbaugh truck and [his] SUV were on the shoulder of the road."

Lofties remained stopped on the shoulder to inspect the damage to his vehicle; Definbaugh took off. Lofties made chase, pulled his vehicle in front of Definbaugh's truck and stopped his car. Both men exited their vehicles. Definbaugh shoved Lofties. "After that [both drivers] got back in [sic] [their] vehicles and continued driving." Lofties called the police. Both drivers eventually exited the interstate and pulled over. Troopers Grabel and Hodgkinson were dispatched to the scene.

Grabel got there first and spoke to both drivers. Definbaugh told her that the other driver had cut him off, stopped in front of him, and accused him of hitting his vehicle. Definbaugh added that he shoved Lofties. Lofties told Grabel that he had pulled onto the shoulder to pass the truck but that Definbaugh had tried to cut him off and their vehicles collided. Lofties indicated that Definbaugh assaulted him after Lofties took photographs of Definbaugh's truck. Grabel gave the drivers forms to write out statements. After the forms were filled out, Grabel interviewed Lofties and Hodgkinson interviewed Definbaugh.

Lofties admitted to Grabel during the interview that he was driving on the shoulder to pass other vehicles. Lofties also acknowledged this in his written statement. In his interview, Definbaugh told Hodgkinson that he did not realize that he had hit Lofties' SUV. He also stated that, although he thought that he was driving in his lane, he might have been "barely" on the shoulder.

Grabel concluded that Definbaugh hit Lofties' vehicle. An eyewitness who called 911 also reported that the empty car hauler hit the SUV and "skipped." Grabel issued Lofties—but not Definbaugh—a ticket for driving outside the marked lanes, under O.R.C. § 4511.33(A)(1), which requires that a vehicle "be driven, as nearly as practicable, entirely within a single lane or line of traffic." Grabel stated that she decided to cite Lofties but not Definbaugh because Lofties admitted that he was driving on the shoulder whereas Definbaugh "could not say if he moved out of his lane or not." In Grabel's view, "if [Lofties] was not passing on the shoulder, there would not have been a collision." Grabel did not issue citations for the collision itself or for Definbaugh's physical assault on Lofties.

Lofties sued the Troopers for race-based selective enforcement. The Troopers requested summary judgment. The district court held that Lofties could not establish that the Troopers acted with "discriminatory purpose" because he did not present sufficient evidence that the officers treated him differently because of race or that the officers acted irrationally. The court held that the Troopers "could have rationally determined that use of the shoulder as an express lane warranted a ticket, while partial intrusion into the shoulder did not." Additionally, the court noted that "there was no evidence that [Hodgkinson] advised Grabel to ticket Lofties."

Lofties appeals.

## II.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party and drawing "all justifiable inferences" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Equal Protection Clause protects against selective enforcement of the law. *Stemler v. Florence*, 126 F.3d 856, 873 (6th Cir. 1997). "In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). Thus, "a plaintiff must demonstrate that a government actor had a bad reason for enforcing the law against [him] and not against a similarly situated party," or "that the action had no rational basis." *Id.* And, "there is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption, the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Stemler*, 126 F.3d at 873 (cleaned up).

Lofties contends that he offered sufficient evidence that the Troopers' decision to ticket him but not also Definbaugh lacked rationality because both drivers committed the same offense— driving outside of the designated traffic lanes in violation of O.R.C. § 4511.33(A)(1). In other words, Lofties maintains that "[b]ased upon their similarly situated status, there was no rational basis to cite [him], and not cite Definbaugh." This argument elides a critical distinction between the two men: Lofties "drove his car completely on the shoulder and passed several vehicles," while Definbaugh "turned his truck only partially into the shoulder and did not pass any vehicles."

And to Trooper Grabel, that made all the difference. As noted, she testified that Lofties freely admitted to breaking the law and Definbaugh did not. As the district court noted, the Troopers "could have rationally determined that use of the shoulder as an express lane warranted a ticket, while partial intrusion into the shoulder did not." Thus, as the district court concluded, "Lofties was arguably more deserving of a ticket than the white driver." Given Lofties' own admissions to the Troopers, we think that this reason is not only conceivable but quite rational. *See Boone*, 385 F.3d at 932–33 (holding that officers had a rational reason for treating off-duty police officer in a fistfight different from the other combatant, citing need to isolate one combatant). Lofties has failed to "disprove the rationality of every conceivable justification for his less favorable treatment." *Ross v. Duggan*, 402 F.3d 575, 587–88 (6th Cir. 2004) (emphasis omitted) (citing *FCC v. Beach Commc'ns Inc.*, 508 U.S. 307, 313–14 (1993)).

Lofties also complains that he was "treated badly, in part, because of [his] race," that Hodgkinson was "short" with him, and that the Troopers "were much more at ease with Definbaugh." In other words, Lofties is suggesting that his race must have been the motivating factor for the singular traffic ticket because the Troopers had no logical reason to cite him but not Definbaugh. This court rejected a similar assertion in *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000). There, an interracial couple claimed selective enforcement because they were investigated for a theft crime, but their white neighbor was not. We held that "condescending glares" and a "get out of town" comment by the police chief was not "'clear evidence' of misbehavior sufficient to sustain their selective enforcement claim to overcome the presumption that the state actors ha[d] properly discharged their official duties" sufficient to sustain their selective enforcement claim. *Id.* at 320. *See generally Bowman v. City of Olmstead Falls*, 756 F. App'x 526, 530–31 (6th Cir. 2018) ("Bowman has *only* put forward speculation and intuition as

his purported proof of McLaughlin and the City's purpose. For this reason, he fails to demonstrate . . . the second element of his selective enforcement claim (discriminatory purpose)."); *Chappell v. GTE Prods. Corp.*, 803 F.3d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference" of discrimination).

Because we conclude that there no evidence of selective enforcement, we need not consider whether the district court erred in holding that Hodgkinson did not participate in the decision to ticket Lofties.

**III.**

The district court's judgment is AFFIRMED.