NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0262n.06

No. 25-3551

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PHILLIP S. ATSAS, )
     Plaintiff-Appellant, )
)
v. )
)
MATTHEW L. BOWEN; CITY OF )
CAMPBELL SCHOOL DISTRICT BOARD )
OF EDUCATION; RYAN YOUNG; KEVIN )
SFERRA; CITY OF CAMPBELL, OHIO, )
     Defendants-Appellees. )
)
)

**FILED**
Jun 11, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: MOORE, WHITE, and THAPAR, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** In 2019, Campbell City School District ("CCSD") Superintendent Matthew L. Bowen heard that Phillip S. Atsas, a physical-education teacher and soccer coach, had been charging parents nonexistent participation fees for their children to play soccer. Concluding that Atsas had committed a crime, Bowen referred the matter to Officer Ryan Young and Lieutenant Kevin Sferra of the City of Campbell Police Department. Relying on statements from six parents and the information Bowen relayed, Young charged Atsas with twelve criminal offenses.

But the criminal case against Atsas crumbled within months. The state dismissed all but two misdemeanor counts, and a jury found Atsas not guilty of the remaining charges. As Atsas tells it, the parents that Bowen and Young considered victims had, in fact, paid Atsas so that their children could play in a private recreational league that he coached—not one of CCSD's soccer

programs. Atsas then filed this action against Bowen and CCSD's Board of Education (the "CCSD defendants"), as well as Young, Sferra, and the City of Campbell (the "City defendants"), bringing various claims pursuant to 42 U.S.C. § 1983 and Ohio tort law. Following discovery, the defendants moved for summary judgment, and the district court granted their motions in full. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment.

## I. BACKGROUND

Atsas has been a physical-education teacher at CCSD for over twenty years. *See* R. 29 (Atsas Dep. at 50–53) (Page ID #499); R. 38-1 (Atsas First Aff. ¶ 2) (Page ID #1026). He has also been actively involved with multiple soccer programs in the community. For many years, Atsas coached high school and intramural soccer at CCSD. R. 29 (Atsas Dep. at 66, 91–96, 103–04, 167) (Page ID #503, 509–10, 512, 528); R. 39-5 (Intramural Permission Slips) (Page ID #1132–33). Ninth- through twelfth-grade students[1] could play high school soccer, competing against other schools from August to November in matches governed by the Ohio High School Athletic Association ("OHSAA"). R. 29 (Atsas Dep. at 57–59, 198) (Page ID #500–01, 536); R. 36-1 (Gulu Dep. at 8–9) (Page ID #879–80). The intramural-soccer program at CCSD, by contrast, was open to students of all ages (although usually only students in eighth grade and below participated) and revolved around internal competitions that began in late February or early March. R. 29 (Atsas Dep. at 197, 200) (Page ID #535–36); R. 37-1 (Kelly Dep. at 44) (Page ID #959); *see also* R. 26 (Young Dep. at 43) (Page ID #177); R. 36-1 (Gulu Dep. at 13) (Page ID #884). Throughout Atsas's tenure as coach, CCSD never had a participation fee for high school soccer, and it made intramural

---

[1]Because eligibility is governed by age, an eighth grader could also participate in high school soccer so long as they met the age requirements. R. 29 (Atsas Dep. at 57–59, 198) (Page ID #500–01, 536).

soccer free-to-play by 2017. *See* R. 29 (Atsas Dep. at 158–59, 170–71, 199) (Page ID #526, 529, 536).

Outside of CCSD, Atsas also coached private, recreational-league soccer for "[l]ittle kids as young as [seven] and high school kids" at the Tri-County Sports Complex ("TCSC"), an indoor soccer facility in Youngstown. *See* R. 29 (Atsas Dep. at 133–34, 206–10) (Page ID #519–20, 538–39); R. 36-1 (Gulu Dep. at 17–18, 20, 23–24) (Page ID #888–89, 891, 894–95); R. 38-10 (TCSC Fliers) (Page ID #1075–76). As relevant here, he coached recreational soccer at TCSC for children between the ages of seven and nine in 2017 and 2018. *See* R. 39-1 (Second Atsas Aff. ¶ 5) (Page ID #1098); R. 29 (Atsas Dep. at 205–10) (Page ID #537–39). Because TCSC charged participation fees and did not "want[] to bother with parents paying them directly," Atsas collected the fees from parents and then remitted payment to TCSC via "one or two large checks." *Id.* ¶ 4 (Page ID #1097–98).

At CCSD, Atsas's disciplinary record was spotty. In 2014, he admitted to engaging in "unauthorized fundraising activities," R. 30 (2014 Settlement) (Page ID #637), after Bowen determined that Atsas had mishandled participation fees for the intramural-soccer program, *see* R. 29 (Atsas Dep. at 170–79) (Page ID #529–31). In response, CCSD formally disciplined Atsas by suspending him without pay for ten days and barring him from coaching for a period of time, *id.* at 190 (Page ID #534); R. 30 (2014 Settlement) (Page ID #637–38), and Bowen told Atsas he could no longer handle money from students or their parents, *see* R. 29 (Atsas Dep. at 201) (Page ID #536).[2] Before the 2017 high school soccer season, Bowen again told Atsas that he was not "supposed to be handling money." *Id.* at 200–01 (Page ID #536).

---

[2]In 2015, Atsas was separately reprimanded by CCSD for "failing to conduct [himself] in a professional manner and insubordination." R. 29 (Atsas Dep. at 191–92) (Page ID #534); R. 30 (2015 Letter) (Page ID #639).

Atsas, however, arranged for Campbell High School soccer players to participate "in two week-long pre-season camps at TCSC" in July 2017 without CCSD's approval. *Id.* at 202–03 (Page ID #537). And rather than asking CCSD, students, or their parents to pay TCSC directly, Atsas planned to organize a fundraiser to cover the camps' costs. *Id.* at 203–04 (Page ID #537). A few weeks after the high school soccer players completed the camps, TCSC sent CCSD a $4,000 invoice. R. 30 (TCSC Camp Invoice) (Page ID #674).

According to Bowen, CCSD had "no record of" why it had received the invoice but paid it upon learning that Atsas organized the camps. *See* R. 28 (Bowen Dep. at 52–54) (Page ID #367–68); R. 30 (TCSC Purchase Order) (Page ID #675). At around the same time, Bowen learned that Atsas and his assistant coaches had asked local businesses to donate funds to cover the camps' cost. R. 28 (Bowen Dep. at 54) (Page ID #368); *see also* R. 29 (Atsas Dep. at 225) (Page ID #542). Bowen wanted to ensure that CCSD was "very, very intentional" about having donors transmit funds directly to the district, not Atsas, because "[w]e did not want him touching any mon[ie]s." R. 28 (Bowen Dep. at 54) (Page ID #368); *see also* R. 30 (Checks & Pay Orders) (Page ID #664–73). Donors ultimately contributed $3,700 to CCSD to cover the camps' cost. R. 30 (CCSD Financial Detail Rep.) (Page ID #678).

After the 2017 high school soccer season, Bowen met with Atsas to discuss the district's "requisition and purchase order process" and Atsas's "ability to fund-raise." R. 29 (Atsas Dep. at 225–26) (Page ID #542–43); R. 30 (12/6/2017 Bowen Email) (Page ID #687). Bowen stated that he did "not want to see [Atsas] in a bad spot due to the failure to follow protocols." R. 30 (12/6/2017 Bowen Email) (Page ID #687). Bowen again instructed Atsas at that meeting that he was "not allowed to handle money." R. 29 (Atsas Dep. at 227) (Page ID #543).

Jumping to the 2019 high school soccer season, Atsas fielded at least one player who was ineligible under OHSAA's rules in a game. R. 38-1 (First Atsas Aff. ¶ 3) (Page ID #1026). CCSD learned that Atsas had done so, and Bowen initiated disciplinary proceedings against Atsas. *See id.* Represented by legal counsel and a union representative, Atsas entered settlement negotiations in September 2019. *Id.* ¶¶ 4–5 (Page ID #1027). CCSD framed its initial settlement offers as "last chance agreement[s]" for Atsas to retain his employment as a teacher and included terms that would have permanently stripped Atsas of his duties as the high school soccer head coach and would have prevented him from "serving as a head coach of any sport for any school district or school entity." *Id.* ¶¶ 6–7 (Page ID #1027); R. 38-8 (Last Chance Agreement ¶¶ 2–3, 12) (Page ID #1069–71). While Atsas and his representatives considered CCSD's settlement proposal, CCSD's lawyer emailed Atsas's lawyer and asked to "talk soon." R. 38-9 (October 2019 Emails) (Page ID #1073). CCSD's lawyer wrote: "Not trying to be coy, but I have some additional facts to share that I don't want to put in writing." *Id.* Although Atsas's lawyer proposed revisions to the draft agreement, nothing in the record suggests that Atsas's lawyer reached out to CCSD's counsel for clarification regarding the "additional facts." Atsas and his representatives rejected CCSD's offer later that month, and negotiations continued through November. R. 38-1 (First Atsas Aff. ¶¶ 8–9) (Page ID #1027).

Some time that fall, Bowen discussed Atsas's "issues with playing ineligible players" at a Board of Education meeting. R. 28 (Bowen Dep. at 57) (Page ID #368). As he briefed Board members, Bowen "reference[d] . . . [Atsas's] history of past and recent deception." *Id.* at 58 (Page ID #369). This prompted certain Board members to reference Atsas's 2014 fundraising issues, which, in turn, caused Board Member Bill Valentino to remark that he thought his "daughter paid Mr. Atsas money for students to participate in soccer." *Id.* at 59 (Page ID #369); R. 33-1 (Bowen

Aff. ¶ 5) (Page ID #807).  Bowen thought that Valentino's remark "did not make sense because [his] grandchildren were very young"—too young to have been caught up in the 2014 fundraising incident.  R. 28 (Bowen Dep. at 59) (Page ID #369).  Bowen reached out to Valentino after the meeting for clarification, and Valentino told Bowen that he thought that Atsas "was collecting money in recent years for his grandkids to participate" in soccer.  *Id.*  Valentino went on to give Bowen "a list of [six or seven] people he believed had . . . paid [Atsas] for soccer participation." *Id.* at 60 (Page ID #369); R. 33-1 (Bowen Aff. ¶ 6) (Page ID #807).

In "mid-November 2019," Bowen met with and collected statements from four parents "on the list [who] were school employees."  *Id.* ¶¶ 6–7 (Page ID #807).  He sought to determine whether Atsas was "collecting money from parents that would have required him to deposit those mon[ie]s into the school account to pay for some type of activity, intramural, clinic, [or] camp." R. 28 (Bowen Dep. at 67) (Page ID #371).  Bowen collected written statements from four parents. Priscilla Garcia Espada wrote that she paid Atsas "between $40–50" for her son to "play[] soccer for TCSC in 2017/2018."  R. 38-4 (Parent Written Statements) (Page ID #1056).  When she had "asked [Atsas] if it was school related . . . he said it was for TCSC."  *Id.*  Kimberly Kolidakis paid Atsas "$50 for one soccer session at the TCSC facility through Campbell City Schools and $60 [for] the following year['s] session."  *Id.* (Page ID #1057).  Stephanie Valentino wrote that she "paid Mr. At[s]as $25.00 for both of my boys . . . to play soccer" in 2017, and that Atsas had given her a fifty-percent discount "since he knew [her]."  *Id.* (Page ID #1058).  The final witness, Joanna Kouros, wrote that "Mr. Phill Atsas requested money in the amount [of] [$]70[] for each of [her] kids, for tournaments [a]t TCSC" in the summer of 2017, he repeated that request in the winter of 2018, and he made a similar offer in the summer of 2019.  *Id.* (Page ID #1059); R. 28 (Bowen

6

Dep. at 68) (Page ID #371). "In total," Kouros stated that she paid Atsas $210. R. 38-4 (Parent Written Statements) (Page ID #1059).

These witness statements led Bowen to conclude that Atsas "had taken money from parents for school-sponsored events offered by the District at no cost and that the money was never deposited with the District." R. 33-1 (Bowen Aff. ¶ 7) (Page ID #807); *see also* R. 28 (Bowen Dep. at 199–200) (Page ID #404) (explaining that parents' comments regarding TCSC were "very suspect to us because we had already paid that bill"). Bowen memorialized his thoughts in a memorandum. He wrote that he had "collected" "[m]ultiple statements . . . from parents (victims) of participating students where they were required to make payment to Phil Atsas directly for participation in TCSC organized preseason camp." R. 38-3 (Bowen Memo) (Page ID #1052). Bowen wrote that, although CCSD had a "record of district approved company donations" for the TCSC preseason camp, there was "no payment history to the [d]istrict from the multiple [parents]" and that those parents paid "for not only the 2017 camp but also the 2018 camp and other activities." *Id.* Because Atsas had "mishandle[ed] . . . funds . . . in the past," "been disciplined previously," and received "stern directives . . . concerning [the] handling of monies," Bowen "determined fraud has been committed, theft and potential criminal acts." *Id.*

Bowen then reported Atsas to the police. On November 19, 2019, Bowen met with Young, CCSD's school resource officer, and Sferra, Young's supervisor. R. 28 (Bowen Dep. at 7–8) (Page ID #356); R. 39-2 (Young Incident Rep. at 1, 7) (Page ID #1099, 1105). At that meeting, Bowen told Young and Sferra that Atsas had been disciplined for unauthorized fundraising activity in 2014, that CCSD sports were "all free to play," and that parents had told Bowen that Atsas "was personally reaching out to families asking for donations of money so their children could participate in soccer or so they could help cover fees for soccer tournaments/soccer camps held at

TC SC (Tri-County Sports Complex)." R. 39-2 (Young Incident Rep. at 7) (Page ID #1105). Bowen also represented to Young that he had "looked into Atsas['s] financial books for the soccer program and that the numbers were off and did not add up." *Id.* In sum, Bowen believed that Atsas may have "stolen money from the soccer program and kept the money for his own personal gain." *Id.* Before the meeting concluded, Bowen provided Young with a list of students who had participated in high school and intramural soccer from 2017 to 2019 and a copy of his memorandum. *Id.*; R. 28 (Bowen Dep. at 8–9) (Page ID #356).

Following the meeting, Young called "each number on the list" Bowen provided, spoke with about one hundred parents, and identified six witnesses willing to provide statements. R. 26 (Young Dep. at 70–71) (Page ID #204–05). Four of them—Garcia Espada, Kolidakis, Valentino, and Kouros—had also provided statements to Bowen. *See* R. 39-3 (Police Statements) (Page ID #1110, 1116, 1119, 1123). Garcia Espada, Valentino, and Kouros stated that they had paid Atsas varying amounts, from $25 to $70 per child, so that their children could play soccer at TCSC. *Id.* (Page ID #1111, 1117, 1124). Kolidakis again wrote that she paid Atsas $50 to $60 for her children to play soccer "at the TCSC soccer facility through Campbell City Schools." *Id.* (Page ID #1120). One of the new witnesses, Keith Zatezalo-Greene, claimed that he paid Atsas so that his daughter could "play int[ra]mural soccer," while the other, Efrain Andino Cruz, stated that Atsas had "[r]equest[ed] $40 for [his] daughter to participate in soccer." *Id.* (Page ID #1108, 1114). As Young understood it, all these witnesses had paid Atsas so that their children, all below ninth grade, could participate in "intramural soccer." R. 26 (Young Dep. at 71) (Page ID #205). Although multiple witnesses had mentioned TCSC, Young "never looked into it" because it was "not what [he] was investigating" and he "didn't think it was necessary" to find out. *Id.* at 29, 33 (Page ID #163, 167). A few days after Young called parents, Atsas's lawyer called Young and

offered to provide copies of checks that Atsas had paid to "TSCS to cover league fees," but Young declined to look at them. R. 39-1 (Second Atsas Aff. ¶¶ 5–6) (Page ID #1098).

On November 27, 2019, Young charged Atsas with six counts of felony theft in office and six counts of misdemeanor theft by deception—one felony and misdemeanor charge for each parent that provided a statement. R. 26 (Charging Documents) (Page ID #265–76). That same day, the state-court arrest warrants issued, *see id.*, and Young proceeded to arrest Atsas, who then spent fourteen hours in jail, R. 39-2 (Young Incident Rep. at 7) (Page ID #1105); R. 29 (Atsas Dep. at 285) (Page ID #557). While the charges against Atsas were pending, Bowen's memorandum was released "to the media in response to a public records request." R. 33-1 (Bowen Aff. ¶ 11) (Page ID #808).

Less than a month later, the state voluntarily dismissed all six felony counts. R. 30 (Felony Dismissals) (Page ID #725–30). About two months after that, Atsas went to trial on the remaining misdemeanor counts. R. 38-1 (First Atsas Aff. ¶ 14) (Page ID #1028). The state dismissed four misdemeanor counts during trial, and the jury found Atsas not guilty of the final two misdemeanor counts after "deliberat[ing] for 22 minutes." *Id.* After the criminal case against Atsas collapsed, Bowen told the local media that "[n]ow that the case against Atsas has wrapped up, the district will begin its internal investigation to ultimately decide the future employment status of Atsas." *Id.* ¶ 15 (Page ID #1028) (alteration in original). In the ensuing months, however, CCSD no longer sought to impose a "last chance" agreement on Atsas or to ban him permanently from coaching for fielding an ineligible player in 2019. Instead, in June 2020, CCSD and Atsas agreed to a four-day suspension without pay and a two-year coaching ban for the ineligible-player incident. R. 38-7 (Settlement Agreement ¶¶ 1–3) (Page ID #1066–67). CCSD also agreed to purge two previous disciplinary actions from Atsas's record to give him "a clean slate." *Id.* ¶ 4 (Page ID #1067).

Atsas subsequently commenced this action, asserting false-arrest, illegal-seizure, and malicious-prosecution claims pursuant to 42 U.S.C. § 1983, a municipal-liability claim against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and false-imprisonment, malicious-prosecution, abuse-of-process, and defamation claims under state law. R. 1 (Compl. ¶¶ 1–92) (Page ID #1–21). Following discovery, the City and CCSD defendants moved for summary judgment on all Atsas's claims, with the individual defendants invoking qualified immunity as to Atsas's § 1983 claims. R. 32 (City Defs.' MSJ at 1–18) (Page ID #752–69); R. 33 (CCSD Defs.' MSJ at 1–22) (Page ID #783–803). Atsas opposed. R. 38 (Pl.'s Opp'n to CCSD Defs.' MSJ at 1–17) (Page ID #1008–24); R. 39 (Pl.'s Opp'n to City Defs.' MSJ at 1–20) (Page ID #1077–96). The district court granted the defendants' summary-judgment motions in full. *Atsas v. Bowen*, No. 4:21-CV-00366, 2025 WL 1756537, at *12 (N.D. Ohio June 25, 2025). This timely appeal followed. R. 68 (Notice of Appeal) (Page ID #1280).

## II. ANALYSIS

On appeal, Atsas raises three claims of error. First, Atsas asks us to revive his federal malicious-prosecution claim and, relatedly, asserts that Bowen and Young are not entitled to qualified immunity. D. 22 (Appellant Br. at 22–33). Second, he argues that the district court erred in finding that his *Monell* claim against the City failed as a matter of law. *Id.* at 37–38. And third, he contends that the district court erroneously granted summary judgment to Bowen and CCSD on his abuse-of-process claim. *Id.* 34–36.[3] We evaluate these arguments in turn.

---

[3]Atsas does not appeal the district court's grant of summary judgment to the defendants on his federal false-arrest and illegal-seizure claims or his state-law false-imprisonment and defamation claims, so he has abandoned those claims. *See Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 540 (6th Cir. 2024). In a similar vein, although Atsas appears to have asserted his federal malicious-prosecution claim against all the defendants below, *see* R. 1 (Compl. ¶ 74) (Page ID #17), his argument on appeal concerns only Bowen and Young, *see* D. 22 (Appellant Br. at 22–33). Atsas has consequently abandoned his federal malicious-prosecution claims against all defendants except Bowen and Young. *See Berry*, 115 F.4th at 540.

## A. Standard of Review

We review de novo a district court's grant of summary judgment. *Howell v. McCormick*, 148 F.4th 834, 843 (6th Cir. 2025). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in their favor. *Petsche v. Hruby*, 172 F.4th 475, 480 (6th Cir. 2026). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"To prevail on a claim under 42 U.S.C. § 1983, [p]laintiffs 'must establish that a person acting under color of state law deprived [them] of a right secured by the Constitution or laws of the United States.'" *Clark v. Abdallah*, 131 F.4th 432, 444 (6th Cir. 2025) (second alteration in original) (quoting *Adams v. Blount County*, 946 F.3d 940, 947 (6th Cir. 2020)). "Government officials performing discretionary functions," however, may assert that qualified immunity shields them from liability under § 1983. *Tanner v. Walters*, 98 F.4th 726, 731 (6th Cir. 2024). A defendant's assertion of qualified immunity does not alter our standard of review, but it does "trigger[] a familiar two-step inquiry." *Alford v. Deffendoll*, 165 F.4th 490, 496 (6th Cir. 2026). First, we must determine whether the defendants violated Atsas's constitutional rights. *Id.* If they did, then it is Atsas's burden to establish "that the right was 'clearly established at the time' of the alleged violation." *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)). We may consider these steps "in whichever order [we] conclude[] makes the most sense." *Tanner*, 98 F.4th at 731.

## B. Malicious Prosecution

We begin with Atsas's federal malicious-prosecution claim against Bowen and Young. A malicious-prosecution claim "require[s] a plaintiff to prove that:    '(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor.'" *Id.* at 734 (quoting *France v. Lucas*, 836 F.3d 612, 625 (6th Cir. 2016)). We focus our attention on the probable-cause element.

"Probable cause exists when the prosecution has 'reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the [prosecuted party] had committed or was committing an offense.'" *Clark*, 131 F.4th at 453 (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). We "center our analysis on the inculpatory and exculpatory evidence available at the time" charges were filed and "disregard the officer's subjective motives." *Alford*, 165 F.4th at 497. In sum, "[t]hese facts must support a belief in a 'probability' or 'substantial chance' of guilt." *Id.* (quoting *Wesby*, 583 U.S. at 57). A plaintiff can satisfy the probable-cause element of a malicious-prosecution claim so long as they demonstrate that *one* charge against them lacked probable cause. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 564 (2024). Courts, therefore, "must analyze probable cause charge-by-charge." *Alford*, 165 F.4th at 500.

The district court did not do so. *See Atsas*, 2025 WL 1756537, at *6–9. Instead, the district court equated the false-arrest and malicious-prosecution probable-cause analyses. *See id.* "Admittedly, the probable-cause inquiry for both claims often overlaps." *Alford*, 165 F.4th at 500. But "they are not identical." *Id.* And although our caselaw provides that "probable cause to arrest for a single offense defeats a false-arrest claim," *id.*, the *Chiaverini* Court rejected "the Sixth

Circuit's categorical rule barring a Fourth Amendment malicious-prosecution claim if any charge is valid," 602 U.S. at 564. The district court thus erred in equating the false-arrest and malicious-prosecution probable-cause analyses.

Making matters worse, the parties whistle past *Chiaverini* on appeal. "[W]e need not remand the case to the district court for a charge-by-charge analysis," however, because Atsas's claim fails at the second step of the qualified-immunity analysis. *See Rasawehr v. Grey*, No. 24-3322, 2025 WL 1639164, at *4 (6th Cir. June 10, 2025). "For the law to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Hodges v. Abram*, 138 F.4th 980, 987 (6th Cir. 2025) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In *Howell*, we held that, before the Supreme Court's 2024 decision in *Chiaverini*, it was not clearly established in this circuit that a malicious-prosecution claim remained viable if some, but not all, charges against the plaintiff were supported by probable cause. 148 F.4th at 854. Because Bowen's and Young's conduct predated *Chiaverini* and because *Howell* binds us, Atsas's malicious-prosecution claim fails if probable cause supported just one of the charges against Atsas. *See Howell*, 148 F.4th at 854.

We conclude that probable cause supported the two felony and two misdemeanor counts relating to Zatezalo-Greene and Kolidakis. To begin, we look to the elements of the state offenses with which Atsas was charged. *See Alford*, 165 F.4th at 500; *cf. Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). The felony theft-in-office statute provides in part that:

> (A) No public official or party official shall commit any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, when either of the following applies:
>
> (1) The offender uses the offender's office in aid of committing the offense or permits or assents to its use in aid of committing the offense[.]

Ohio Rev. Code § 2921.41(A)(1). A public official is "any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity." *Id.* § 2921.01(A). And the misdemeanor theft-by-deception statute provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [b]y deception." *Id.* § 2913.02(A)(3).

Even viewing the facts in the light most favorable to Atsas, there was probable cause to believe that Atsas had leveraged his role as the head of CCSD's intramural-soccer program to wrongfully obtain money from Zatezalo-Greene and Kolidakis. In the years leading up to 2019, Atsas had engaged in fundraising improprieties with respect to the intramural-soccer program and, despite instructions to the contrary, attempted to fundraise behind CCSD's back for CCSD-related soccer programming at TCSC. *See* R. 29 (Atsas Dep. at 170–79, 200, 202–04) (Page ID #529–31, 536–37). Moving through the list of students who had participated in intramural soccer during the relevant period, Young then received statements from Zatezalo-Greene and Kolidakis that they had paid Atsas for school-sponsored soccer. Zatezalo-Greene wrote that he paid Atsas for his daughter to play intramural soccer in 2018—a year after CCSD stopped charging participation fees. R. 39-3 (Police Statements) (Page ID #1108). In addition, Kolidakis wrote that her children played intramural soccer at TCSC "through Campbell City Schools." *Id.* (Page ID #1120); *see also* R. 26 (Young Dep. at 71) (Page ID #205). In short, based on the evidence gathered by Bowen and Young during the initial investigation, there existed a substantial chance that Atsas had wrongfully obtained money from Zatezalo-Greene and Kolidakis as the head of CCSD's intramural-soccer program.

Atsas's counterarguments do not persuade us otherwise. He avers that Zatezalo-Greene and Kolidakis had, in actuality, paid him registration fees for private, youth recreational soccer at

TCSC. *See* D. 22 (Appellant Br. at 26). Although this may be true, what matters for the probable-cause analysis is whether Bowen or Young were aware of information that rebutted the "presumption of reliability and veracity" that investigators are entitled to assign to eyewitness statements. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). Atsas argues that the parents' references to TCSC, his lawyer's offer to provide copies of checks that Atsas paid to TCSC, and Bowen's and Young's failure to investigate further the TCSC explanation defeat probable cause. *See* D. 22 (Appellant Br. at 26–27). To be sure, Bowen's and Young's failure to investigate whether the payments were for private, youth soccer at TCSC, Young's admission that he neither knew nor attempted to ascertain what TCSC meant, and Young's decision to turn down information about Atsas's payment to TCSC cast significant doubt on the existence of probable cause for many of the charges against Atsas. But Zatezalo-Greene did not mention TCSC whatsoever, and while Kolidakis did, she specified that her children played soccer at TCSC through CCSD. R. 39-3 (Police Statements) (Page ID #1108, 1120). The specificity of Zatezalo-Greene's and Kolidakis's statements, coupled with the background knowledge of Atsas's prior fundraising issues, supplied probable cause for two felony and two misdemeanor counts.[4]

---

[4]For these reasons, Atsas's reliance on *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000), is also unpersuasive. There, we held that an officer did not have probable cause to arrest a couple on suspicion of theft based on another individual's "mere allegation that she owned the items in [the couple's] storefront." *Id.* at 315–18. Because the items allegedly stolen were generic and "commonly" and "legally" "owned by countless people," we concluded that "[a]n allegation by one individual that items in another's possession actually belong to her is not enough to create probable cause that a crime has been committed" and that, therefore, further investigation was necessary. *Id.* at 316–17. Here, on the other hand, Bowen and Young did not rely on the mere allegations of one individual as the basis for the charges. Rather, Young contacted about one hundred parents and obtained several written statements. And, prior to his investigation, he had been informed of Atsas's prior history mishandling funds and the resulting prohibition on his collecting money. Therefore, unlike the officer in *Gardenhire*, Bowen and Young engaged in some level of investigation into the alleged crime before making an arrest.

Because probable cause existed for at least some of the charges against Atsas, we affirm the district court's grant of summary judgment to Bowen and Young on Atsas's malicious-prosecution claim.[5]

## C. *Monell* Liability

We turn next to Atsas's *Monell* claim against the City.[6]  In order to hold a municipality liable under § 1983, a plaintiff must demonstrate that they were deprived of a federal right by "a municipal policy or custom." *Franklin v. Franklin County*, 115 F.4th 461, 470 (6th Cir. 2024) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).  There exist "at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom," including: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Atsas contends that Bowen, as superintendent, "was [CCSD's] final policymaker for investigations of staff and referrals to law enforcement," and that the City allowed Young to file charges against him because it failed to supervise him properly.  D. 22 (Appellant Br. at 36–38).  In other words, both of Atsas's *Monell* claims hinge on the existence of a valid malicious-prosecution claim against Bowen and Young—not on a "constitutional violation[] committed by

---

[5]In his opening brief, Atsas references his state-law malicious-prosecution claim "in a perfunctory manner, without [making] some effort to develop an argument," so he has forfeited it. *Clemons v. Couch*, 3 F.4th 897, 902 n.2 (6th Cir. 2021) (quoting *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013)).

[6]Atsas also articulates a *Monell* claim against CCSD, arguing that Bowen was a final decisionmaker for the district, and while exercising that authority, maliciously prosecuted him.  D. 22 (Appellant Br. at 36–37).  As best as we can tell, Atsas did not assert this claim below.  *See generally* R. 38 (Pl.'s Opp'n to CCSD Defs.' MSJ at 1–17) (Page ID #1008–24).  "The failure to present this argument to the district court means that [Atsas] has forfeited it." *Alford*, 165 F.4th at 499.  In any event, even if Atsas had raised this claim in the district court, it would fail for the reasons explained below.

a municipality *qua* municipality, even in the absence of a showing of a constitutional violation by any one individual officer." *Grote v. Kenton County*, 85 F.4th 397, 414 (6th Cir. 2023). The failure of Atsas's malicious-prosecution claim therefore dooms his *Monell* claims, and we affirm the district court's grant of summary judgment to the City.

## D. Abuse of Process

Finally, we address Atsas's state-law abuse-of-process claim against CCSD and Bowen. A defendant is liable for abuse of process if they (1) initiated a legal proceeding "in proper form and with probable cause"; (2) subsequently "pervert[]" the proceeding "to attempt to accomplish an ulterior purpose for which [the proceeding] was not designed"; and (3) cause "direct damage" to the plaintiff "from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 115, 116 (Ohio 1994). To establish the second element, a "plaintiff must identify both *an act committed during the process that was not proper in the normal conduct of the proceeding* and the defendant's ulterior motive." *Cox v. Oliver*, 66 N.E.3d 1101, 1105 (Ohio Ct. App. 2016) (quoting *Palivoda v. Felix*, No. 2010–A–0017, 2011 WL 4790982, at *8 (Ohio Ct. App. 2011) (Wright, J., concurring)). "Therefore, there is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich*, 626 N.E.2d at 118 n.2 (citation modified); *see also Hershey v. Edelman*, 932 N.E.2d 386, 395 (Ohio Ct. App. 2010) (holding that the defendant's abuse-of-process counterclaim failed because he failed to identify any improper actions that the plaintiff took after filing the police report that initiated the defendant's criminal proceedings).

Here, Atsas maintains that CCSD and Bowen helped commence the criminal proceedings against him with the goal of forcing him to accept a last-chance agreement and "driving him out of employment notwithstanding union protections." D. 22 (Appellant Br. at 34). In support, Atsas

17

points to the October 2019 email CCSD's counsel sent to his lawyer,[7] Bowen's memorandum, its release to the media pursuant to a public records request, and Bowen's post-trial statement to the media. *Id.* at 34–35. None of these actions, however, took place "during the process" at issue— Atsas's criminal case. *Cox*, 66 N.E.3d at 1105 (citation modified); *Hershey*, 932 N.E.2d at 395 ("[D]efendant has not produced evidence raising a genuine issue of material fact as to whether there was improper activity that occurred *after* the police report was made and the 'process' was set in motion."). Atsas, therefore, has failed to "show[] that the process itself was perverted." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016). We thus affirm the district court's grant of summary judgment to CCSD and Bowen on this claim.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[7]Atsas also mentions the October 2019 email in connection with his malicious-prosecution claim, asserting in an introductory portion of the analysis section of his brief that it creates a genuine issue of material fact regarding Bowen's motivations that undermines a finding of probable cause. D. 22 (Appellant Br. at 23). He does not, however, rely on the email in his argument section pertaining to the malicious-prosecution claim. In any event, Bowen's "subjective state of mind . . . whether good faith or ill will" is "irrelevant" to the malicious-prosecution analysis. *Sykes v. Anderson*, 625 F.3d 294, 310 (6th Cir. 2010) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 n.5 (4th Cir. 1996)). "Regardless of the subjective reason" for the defendants' investigation into and prosecution of Atsas, as discussed, "they had probable cause to do so." *Codrington v. Dolak*, 142 F.4th 884, 895 (6th Cir. 2025).